*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1642**

In re the Marriage of:
Charles DeBolt Hart, petitioner,
Appellant,

vs.

Jennifer Jayne Hart,
Respondent.

**Filed August 31, 2015
Affirmed in part, reversed in part, and remanded
Willis, Judge\***

Ramsey County District Court
File No. 62-FA-13-67

Debra E. Yerigan, Molly R. Hamilton, Messerli & Kramer P.A., Minneapolis, Minnesota (for appellant)

Linda S.S. de Beer, de Beer & Associates, P.A., Lake Elmo, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Willis, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WILLIS**, Judge

In this dissolution action, appellant husband challenges the district court's property division, permanent spousal-maintenance award, and child-support award. We affirm in part, reverse in part, and remand.

## FACTS

In November 2013, appellant Charles Hart and respondent Jennifer Hart dissolved their 16-year marriage. They have two minor daughters. The parties entered into a series of stipulations resolving many of their legal issues. Relevant here, the parties agreed that the valuation date for marital assets was February 13, 2013; that Charles had paid $36,914 in attorney fees and costs from marital funds as of July 9, 2013; and that Jennifer had been provided $25,313 from marital funds for attorney fees and costs as of July 9, 2013.

The district court found that the parties' homestead was valued at $515,000 and was encumbered by mortgages totaling $249,377. Finding that Charles had a $293,550 nonmarital interest in the property, the district court awarded the homestead to Charles "at no value," notwithstanding the fact that Charles's nonmarital interest exceeded the equity in the property by $27,927. The district court ruled that this shortfall "is not a [marital] debt and should not be treated as a debt."

After awarding the homestead to Charles, the district court adopted the parties' stipulated valuation date for marital assets of February 13, 2013, finding that there was "no equitable reason to set differing valuation dates for various assets." It then ordered

2

an "[a]pproximately equal division of the marital estate," finding that "[a]n equal division of the marital estate does not create an undue hardship." It awarded assets totaling $386,301 to Charles and $234,430 to Jennifer. To adjust for the disparity in these amounts, the district court ordered Charles to pay Jennifer a "cash property equalizer of $75,936."

In awarding spousal maintenance, the district court found that Charles had an average monthly income of $27,643 and reasonable monthly expenses of $9,246. It found that Jennifer "is 47 years old and in good physical and mental health." It noted that she had "been out of the full-time workplace since the parties married," that she had "discontinued her education because the demands of managing the family and working made school attendance unrealistic," and that "[s]he does not plan to return to school, in part because she would be in her fifties when she graduated and obtained employment at an entry level position." The district court determined that the highest annual income Jennifer earned before the marriage was $38,000, but it also noted that "[s]he did so by working two jobs, which is currently not an option" and that "[s]he testified that her previous job skills as a claims processor are outdated."

The district court found that Jennifer currently earned $15 per hour in part-time employment but also that "[s]he has not applied for a full-time job," concluding that she "is voluntarily underemployed" as a result. Accordingly, it imputed gross monthly income of $2,600 to Jennifer. It found that her reasonable monthly expenses were either

$8,935 or $9,840,[1] "considering the marital standard of living." The district court determined that Jennifer was "not able to provide for her reasonable needs and be self-supporting," due in part to her attorney fees, her need to purchase a home, and her obligations to care for the parties' children. It concluded that her "ability to become self-supporting is uncertain" and that "[h]er need for spousal maintenance is permanent." Accordingly, it awarded her permanent spousal maintenance of $7,000 per month. The district court also ordered that Charles pay Jennifer $2,136 per month in child support and that both parties contribute a total amount of $1,583 for their children's extracurricular activities, according to their share of the children's expenses.

## DECISION

**I.  The district court did not abuse its discretion in its division of the parties' property.**

Charles challenges the district court's property division, arguing that it does not reflect the district court's intention to divide marital assets equally. "A [district] court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). "We will affirm the [district] court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Id.*

---

[1] The district court's order states that Jennifer's reasonable monthly expenses were $8,935, but the line items that the district court found collectively constituted Jennifer's reasonable monthly expenses total $9,840. Because we reverse and remand on other issues, we need not resolve this discrepancy, leaving it instead for the district court to address on remand.

4

"An equitable division of marital property is not necessarily an equal division." *Crosby v. Crosby*, 587 N.W.2d 292, 297 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999). But when the district court states a clear intention to divide the marital estate equally, we may remand for the district court to reconsider an unequal distribution. *See, e.g.*, *Freking v. Freking*, 479 N.W.2d 736, 740 (Minn. App. 1992) ("Although an equal division of marital property is not required, the [district] court made clear in its orders that an equal division was intended. We remand for further consideration of the property division consistent with this opinion."). Because Jennifer does not contest Charles's claim that the district court intended an equal division of marital property, we accept it as accurate.

Charles contends that the district court's award of the marital homestead to him at a zero value failed to account adequately for the marital indebtedness in the form of the home-equity line of credit. A district court's valuations of marital assets and liabilities are factual findings that will not be set aside unless clearly erroneous. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001). "Such broad deference is appropriate because valuation is necessarily an approximation in many cases. Accordingly, the value arrived at by the [district] court need only fall within a reasonable range of figures." *Id.* (quotations and citation omitted).

Charles argues that, because the home-equity line of credit was often used to pay marital expenses, the district court should have treated it as a marital debt and, in effect, awarded him title to the homestead at the negative value reflected by the shortfall between the value of his nonmarital interest and the equity in the homestead. But Charles

conceded at trial that the home-equity line of credit was used to make improvements to the homestead in addition to paying living expenses. When purchased using marital funds, the value of improvements to a nonmarital asset is marital property. *See Nardini v. Nardini*, 414 N.W.2d 184, 193 (Minn. 1987); *Swick v. Swick*, 467 N.W.2d 328, 331 (Minn. App. 1991), *review denied* (Minn. May 16, 1991). The record does not reflect the proportion of advances from the home-equity line of credit used for each purpose, so the district court had no way to value precisely Jennifer's share of the marital interest in the improvements to the homestead or measure the value of the improvements against the balance of the home-equity line of credit. It therefore lacked the information necessary to separate the marital and nonmarital interests in the homestead.

Because of this lack of information and the unlikelihood that the parties could produce sufficient information to separate the marital and nonmarital interests in the homestead, we interpret the district court's action as an attempt to approximate these interests by assigning to Charles the entire liability of the home-equity line of credit and the mortgage but also awarding him the entire homestead, including Jennifer's interest in any improvements made from marital funds. On this record, the resulting "package" of mixed marital and nonmarital interests and debts could reasonably be valued at zero because the home-equity line of credit is substantially larger than the equity shortfall and the equity shortfall is less than 10% of the fair market value of the homestead. At a minimum, the district court's approximate net valuation of the homestead at zero is not clearly erroneous and is within a "reasonable range of figures." *Maurer*, 623 N.W.2d at 606.

Charles contends that he should receive an adjustment in the property division to compensate him for tax and line-of-credit payments he made after the valuation date from accounts awarded to him in the property division. A district court must set the valuation date for marital assets as the date of the initially scheduled prehearing settlement conference, unless the parties agree to a different date or the district court finds that another date is fair and equitable under the circumstances. Minn. Stat. § 518.58, subd. 1 (2014). Here, the parties stipulated to a valuation date of February 13, 2013, and the district court found "no equitable reason to set differing valuation dates for various assets."

A district court may adjust valuation dates to reflect changes in the value of assets that occur between the original valuation dates and the date of the district court's property division. *In re Bender*, 671 N.W.2d 602, 606 (Minn. App. 2003). But Charles cites no authority that *requires* the district court to revisit the valuation date to account for tax or debt payments made after the valuation date but before assets are actually divided between the parties. We therefore conclude that the district court acted within its discretion by applying the parties' stipulated valuation date notwithstanding Charles's intervening tax and debt payments.

Charles argues that the district court failed to account for some attorney-fee payments made from marital funds. The parties stipulated that, as of July 9, 2013, Charles had paid attorney fees and costs of $36,914 from marital funds and Jennifer had been provided with $25,313 from marital funds for attorney fees and costs. The district court used these figures in adjusting its property division. Charles contends, however,

7

that the district court's reliance on the stipulation effectively sets a different valuation date for the parties' attorney fees, claiming that the record establishes that actual attorney-fee payments amounted to $12,930 to his attorneys and $4,187 to Jennifer's attorneys.

"Courts favor stipulations in dissolution cases as a means of simplifying and expediting litigation, and to bring resolution to what frequently has become an acrimonious relationship between the parties." *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). "Stipulations are therefore accorded the sanctity of binding contracts. They cannot be repudiated or withdrawn from one party without the consent of the other, except by leave of the court for cause shown . . . ." *Id.* at 521-22 (quotation and citation omitted).

In effect, Charles seeks to withdraw from the parties' stipulation regarding attorney fees and to replace it with a finding based on those payments that are reflected in the record. But there is no basis to conclude that the payment records Charles highlights reflect the entirety of the parties' attorney fees and costs. Although the date of the parties' attorney-fee stipulation differs from the valuation date for marital assets, caselaw establishes that "[a]ny amount taken from marital property to pay one party's attorney's fees should be accounted for . . . and the other party compensated in the distribution." *Thomas v. Thomas*, 407 N.W.2d 124, 128 (Minn. App. 1987). We therefore conclude that the district court did not abuse its discretion by failing to reconsider the parties' attorney-fee stipulation in light of their later agreement regarding a valuation date. We affirm the district court's property division.

8

**II.    The district court did not abuse its discretion by awarding permanent spousal maintenance, but the amount of the award is not supported by the record.**

Charles challenges the permanence and the amount of the district court's spousal-maintenance award. We review a district court's spousal-maintenance award for abuse of discretion, reversing only if the district court's findings are unsupported by the record or if it misapplied the law. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). "Findings of fact concerning spousal maintenance must be upheld unless they are clearly erroneous." *Gessner v. Gessner*, 487 N.W.2d 921, 923 (Minn. App. 1992). "Findings of fact are clearly erroneous when they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. Aug. 21, 2007).

Charles contends that the district court's award of permanent spousal maintenance is not justified because Jennifer's good health, previous work experience, and proficiency in claims-processing software make her capable of becoming self-supporting. A district court may award spousal maintenance when a spouse "lacks sufficient property, including marital property apportioned to the spouse, to provide for [the] reasonable needs of the spouse *considering the standard of living established during the marriage . . . .*" Minn. Stat. § 518.552, subd. 1(a) (2014) (emphasis added). Any "doubts with respect to duration [of spousal maintenance] are to be resolved in favor of permanency." *Nardini*, 414 N.W.2d at 196.

Here, the district court determined that the standard of living established during the marriage was reflected to the degree possible in Jennifer's reasonable monthly

9

expenses. It found that Jennifer's previous maximum income was $38,000 per year, earned by working two jobs simultaneously. Charles does not challenge these findings. Instead, he asserts that Jennifer could become self-supporting if she obtains full-time work or pursues additional education.

The district court considered Charles's arguments and rejected them. It agreed that Jennifer was voluntarily underemployed but compensated for this by imputing to her income based on a full-time work schedule at her present job. It found that, even assuming that Jennifer could return to her previous field of employment, it was "currently not an option" for her to match her previous maximum income by working two jobs simultaneously. It noted that, even if Jennifer sought additional education, she would be in her 50s by the time that she finished and sought entry-level employment. It also predicted that Jennifer's primary responsibility for the children would consume much of her time. Based on these considerations, the district court found that Jennifer's prospects for becoming self-supporting at the marital standard of living are "uncertain" and that permanent spousal maintenance is therefore justified. Although Charles takes issue with the district court's weighing of Jennifer's child-care responsibilities and its assessment of her educational opportunities and job prospects, he points to nothing in the record that suggests that the district court's findings were clearly erroneous. We therefore conclude that the district court did not abuse its discretion by awarding permanent spousal maintenance.

Charles also challenges the amount of the district court's spousal-maintenance award, arguing that it exceeds Jennifer's needs. A spousal-maintenance award must be

justified by a showing of need. *Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989); *see also Lee v. Lee*, 775 N.W.2d 631, 642 (Minn. 2009) (remanding for the district court to make findings justifying a maintenance award in excess of a recipient's reasonable needs). Using either the district court's conclusion that Jennifer's reasonable needs are $8,935 per month or the $9,840 total of the district court's line-item findings of her monthly expenses, the district court's spousal-maintenance award exceeds Jennifer's needs. The district court imputed $2,600 in monthly income to Jennifer, and it awarded her $2,136 in monthly child support and $7,000 in monthly spousal maintenance. Jennifer would thus receive a total monthly income of $11,736, exceeding her reasonable monthly needs by either $1,896 or $2,801.

The district court made no findings justifying a spousal-maintenance payment in excess of Jennifer's needs. Jennifer contends that the district court implicitly included the tax liability that she would incur. But the district court explicitly declined to consider tax consequences of its spousal-maintenance award, stating, "At this point in time, it cannot be determined what [Jennifer's] income taxes will be." Accordingly, we decline to infer a tax-liability finding from the district court's spousal-maintenance award. Because the award on its face exceeds Jennifer's reasonable needs, we reverse and remand for the district court to reconsider its spousal-maintenance award and make any appropriate additional findings.

**III. The district court's child-support award is not based on the facts in the record.**

Charles also challenges the district court's child-support award, arguing that it is based on an incorrect calculation of his presumptive child-support obligation and that it is affected by the district court's excessive spousal-maintenance award. A district court has "broad discretion" in setting the parties' child-support obligations. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). An appellate court will find that the district court abused its discretion only if there is a clearly erroneous conclusion that is against logic and the facts in the record. *Id.*

Charles contends that the district court's calculation of his presumptive child-support obligation overstates his income by failing to deduct Jennifer's imputed income and his spousal-maintenance obligation. Although Charles misidentifies the problem, the district court did err in calculating the parties' incomes. A district court's calculation of each parent's presumptive child-support obligation begins by determining the gross income of each parent under Minn. Stat. § 518A.29. Minn. Stat. § 518A.34(b)(1) (2014). Gross income includes "salaries, wages, commissions, . . . spousal maintenance received under a previous order or the current proceeding, [and] potential income under section 518A.32." Minn. Stat. § 518A.29(a) (2014). A parent's gross income is reduced by the amount of spousal maintenance ordered to be paid to the other parent. Minn. Stat. § 518A.29(g) (2014). "Potential income" includes imputed income resulting from a district court's finding that a parent is voluntarily underemployed. *See* Minn. Stat. § 518A.32, subd. 2(1) (2014). After calculating each parent's monthly gross income, the

district court determines each parent's presumptive child-support "percentage contribution" by dividing each parent's monthly income by their combined monthly income. Minn. Stat. § 518A.34(b)(3) (2014).

The record indicates that the district court properly determined Charles's monthly income to be $27,643 and deducted his $7,000 spousal-maintenance obligation, resulting in a monthly gross income of $20,643. Charles cites no authority supporting his claim that Jennifer's imputed income should be deducted from his monthly income when calculating his child-support obligation. But with regard to Jennifer's income, the district court erred by designating her $2,600 imputed income as monthly income received rather than potential income and by failing to include Jennifer's receipt of $7,000 in spousal maintenance as monthly income received. This error results in miscalculation of the parties' presumptive child-support percentage contribution because, although Charles's income is not overstated as he claims, Jennifer's income is understated. Accordingly, we reverse and remand for the district court to recalculate its child-support award.[2]

Charles also challenges the district court's medical-support calculation, arguing that it is affected by its incorrect calculation of the parties' incomes. After determining each parent's income, a district court must determine their respective medical-support obligations. Minn. Stat. § 518A.34(d) (2014). Medical support for children is presumptively divided between parents according to their child-support percentage contribution. Minn. Stat. § 518A.41, subd. 5(a) (2014). Here, the district court properly

---

[2] Because the calculation of the parties' gross monthly incomes is affected by the amount of spousal maintenance awarded, it would be necessary for the district court to reconsider its child-support award on remand in any event.

completed this process but, because the result was affected by the district court's understating Jennifer's income, the matter must be addressed on remand.

Charles also contends that the district court's order directing the parties to contribute a total of $1,583 for the children's extracurricular activities, allocated according to the parents' presumptive child-support contribution share, is erroneous for failure to clearly state each party's contribution share, is lacking support in the record as to the amount ordered, and is ambiguous as to a mechanism for payment. Charles's first contention is factually erroneous because the district court clearly indicated its finding of each parent's contribution share on the child-support worksheet attached to its order. As to his other contentions on this issue, Charles cites no authority that requires a district court to justify its findings for support of children's extracurricular activities or specify a mechanism for parties to fulfill its order. Therefore, although the district court may, in the exercise of its discretion, elect to reconsider the issue on remand, it is not required to do so. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection."). The district court also may, in its sole discretion, reopen the record upon remand.

**Affirmed in part, reversed in part, and remanded.**

14